**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

4500 TRANSWAY ROAD, LLC
    *Plaintiff*,

v.
                                     Civil Action No.  ELH-20-2068

KERRY CANAVAN, *et al.*,
    *Defendants*.

**MEMORANDUM OPINION**

This action arises from a dispute regarding the sale of real property.  Plaintiff 4500 Transway Road, LLC ("Transway") entered into a contract with defendants Kerry and Bonnie Canavan (collectively, the "Canavans") to buy a parcel of realty, approximately five acres in size, located on Transway Road in Baltimore County, Maryland (the "Property").  However, the Canavans did not proceed to closing as required because they failed to clear the Property of various encumbrances, including two federal tax liens and one State tax lien.

As a result, Transway filed a "Complaint And Notice Of Lis Pendens" in the Circuit Court for Baltimore County against the Canavans and three parties who might have liens on the Property: Fatemah Ilkhan; the State of Maryland/Comptroller of Maryland (the "State"); and the United States/Internal Revenue Service (the "IRS").  *See* ECF 1-3 (the "Complaint"); ECF 4 (same). Several exhibits were appended to the Complaint.  ECF 1-4; ECF 1-5; ECF 1-6.  In sum, Transway sought specific performance and an order to interplead the purchase price of $787,500, for disbursement to creditors of the Canavans.

On July 15, 2020, the United States removed the suit to federal court.  ECF 1 ("Notice of Removal").[1]  Removal was based on three grounds, pursuant to 28 U.S.C. §§ 1441, 1442, and 1444.  *Id.* ¶ 2.

The State answered the Complaint.  ECF 15.  The United States filed a combined Answer and Cross Claim against the interpleader defendants.  ECF 16.  It asserted, *inter alia*, that the federal tax liens lodged against the Canavans established the government's priority to the proceeds of the sale of the Property.  ECF 16 at 5-8 (the "Cross Claim").  The Canavans answered the Cross Claim, disputing the extent of their tax liability to the United States.  *See* ECF 20, ¶¶ 4, 10-12.  Defendant Ilkhan has not responded to the suit or to the Cross Claim.  Although the State filed an Amended Answer (ECF 26),  it did not specifically respond to the Cross Claim.

The United States has moved for summary judgment as to its Cross Claim, which is supported by a memorandum of law (ECF 37; ECF 37-1) (collectively, the "Motion") and one exhibit (ECF 37-2).  The Motion is unopposed.  *See* Docket.

By Order of September 2, 2021 (ECF 40), I noted that no party had responded to the Motion.  *Id.* at 3.  Therefore, I directed the parties to file a status report with the Court.  *Id.*

Accordingly, on September 16, 2021, plaintiff's counsel reported to the Court that "the closing on the sale of the Property has occurred, and all of the necessary documentation/releases have now been recorded."  ECF 41.  Furthermore, the status report advised that plaintiff's "courier has (or will shortly) deliver a check consisting of the balance of the sale proceeds, for payment into the Court's escrow account, pursuant to the original Settlement Order issued in this case."  *Id.*  Plaintiff's counsel also stated that it was his understanding that the Canavans did not intend to oppose the Motion.  *Id.*  The following day, plaintiff delivered the sum of $688,158.52 for deposit

---

[1] I shall refer to the United States variously as the "IRS" and the "government."

into the Court's registry.  *See* Docket.  I shall refer to the deposit as the "Fund" or the "Interpleaded Fund."

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion in part and deny it in part.

## I.       Factual and Procedural Background[2]

The facts of this case are not in dispute.  On March 1, 2016, Transway entered into a contract with the Canavans to purchase the Property for the sum of $787,500.  ECF 1-3, ⁋⁋ 2-6; *see* ECF 1-4 (the "Purchase Agreement").  As part of the Purchase Agreement, the Canavans promised to "deliver good and marketable title to the Property, free and clear of any liens or other encumbrances."  ECF 1-3, ⁋ 6; *see* ECF 1-4, ⁋ 5.  Further, the Purchase Agreement "provided that closing would occur on the earlier of two events: a) the month of February 2017, or (b) 60 days from the date that the Seller provides notice (after the buyer's due diligence period) that it is ready, willing, and able to close on the sale."  ECF 1-3, ⁋ 8; *see* ECF 1-4, ⁋ 13.

However, plaintiff did not receive the required notice from the Canavans by February 2017. ECF 1-3, ⁋ 9. Thereafter, it "provided written notice of the requirement that the parties proceed to closing, and the Canavans' continuing need to resolve all outstanding liens prior to closing," which included "significant tax lien issues."  *Id.* ⁋⁋ 10 & n.3; *see* ECF 1-5.  In particular, the Complaint avers that the Canavans' Property is subject to two federal tax liens and one State tax lien. *See* ECF 1-3, ⁋ 20.

In response, the Canavans indicated that they needed more time to clear the liens on the Property.  *Id.* ⁋ 11.  Therefore, the parties agreed to extend the deadline for closing until June 30,

---

[2] Where appropriate, I have drawn on the factual and procedural background, as outlined in my Order of September 2, 2021 (ECF 40).

2017. *Id.* ⁋ 12.  Instead, on April 29, 2016, the Canavans further encumbered their Property by executing a Deed of Trust, in favor of defendant Ilkhan, in order to secure a debt in the amount of $130,000.  *Id.* ⁋⁋ 14-15; *see* ECF 1-6.

Plaintiff filed the instant action in State court, seeking specific performance of the Purchase Agreement, *id.* ⁋ 32A; a court order "allowing [plaintiff] to interplead funds in the amount of the purchase price into Court, for disbursement as directed by the Court," *id.* ⁋ 36; and a declaratory judgment resolving "any issues concerning the attachment of the purported liens and/or the priority of each parties' respective interest."  *Id.* ⁋ 41.  As noted, on July 15, 2020 the United States removed the case to federal court (ECF 1).  And, it filed a Cross Claim against the other interpleader defendants, asserting its priority to the proceeds from the sale of the Property.  ECF 16, ⁋⁋43-54.

Specifically, the United States asserts that the IRS assessed income taxes against the Canavans for each year between 2005 and 2016, with the exception of 2015.  *Id.* ⁋ 46.  The dates and the amounts of the federal tax assessments are specified in the table below.  Notably, the table reflects that for 2008 and 2009, the assessment was not made until August 2016, and for 2016, the assessment was not issued until March 2018.

| Tax Period | Assessment Date | Tax Amount |
| --- | --- | --- |
| 2005 | April 21, 2014 | $45,264 |
| 2006 | April 21, 2014 | $163,934 |
| 2007 | April 21, 2014 | $17,057 |
| 2008 | August 1, 2016 | $62,066 |
| 2009 | August 1, 2016 | $104,810 |
| 2010 | June 15, 2015 | $3,538 |

| 2011 | June 22, 2015 | $2,896 |
| 2012 | June 15, 2015 | $2,029 |
| 2013 | June 22, 2015 | $1,303 |
| 2014 | July 13, 2015 | $728 |
| 2016 | March 19, 2018 | $578 |

Moreover, the Cross Claim asserts that the IRS issued notice of each tax assessment and a demand for payment to the Canavans, in accordance with 26 U.S.C. § 6303. ECF 16, ⁋ 47.  Thus, according to the United States, a federal tax lien arose on the date of each assessment and attached to all the Canavans' "property and rights to property then owned or thereafter acquired."  *Id.* ⁋ 49 (citing 26 U.S.C. §§ 6321, 6322).  According to the government, "[t]he Canavans' property included the Transway property before the completion of the land sale . . . and the Canavans' rights to property include their right to any sales proceeds following the sale."  ECF 37-1 at 3 (internal quotation marks and citation omitted).

In addition, the Cross Claim alleges that on May 6, 2015, the IRS recorded a lien against the Canavans' Property for income tax assessments for 2005 through 2007.  ECF 16, ⁋ 50. And, on September 25, 2017, the IRS recorded a notice of tax liens on the Canavans' Property for the period of 2008 through 2014.  *Id.*

The United States avers that the Canavans "have failed to pay . . . the full amount owed as a result of these assessments." *Id.* ⁋ 51.  Thus, accounting for interest and the relevant statutory penalties, the "Canavans' liability with respect to the income tax assessments for 2005 through 2007 totals $628,752.33," and "the notice of federal tax liens, recorded on September 25, 2017 is for an amount that greatly exceeds the remaining interpleaded funds . . . ."  ECF 16, ⁋⁋ 53, 54.  In

sum, according to the United States, the Canavans face federal tax liability in the amount of more than $1 million. *Id.* ¶ 52.

Based on these facts, the United States asks the Court to find that it has valid federal tax liens. ECF 16, ¶ 54A.  Moreover, it asks the Court to award the government the sum of $628,752.33 from the Interpleaded Fund, pursuant to the federal liens recorded on May 6, 2015, "plus statutory additions . . . ."  *Id.* ¶ 54B.  It also asks the Court to Order "that the remaining interpleaded funds be distributed to the United States and other creditors according to the respective priorities of their liens and claims . . . ."  *Id.* ¶ 54C.  And, the United States seeks "costs of defending this action and prosecuting its cross claims against the other interpleaded defendants."  *Id.* ¶ 54D.

Thereafter, on September 30, 2020, the Canavans answered the Complaint and the Cross Claim.  *See* ECF 19; ECF 20.  Of import here, the Canavans admit that they failed to pay the assessed federal income taxes in full and that they received notice and demands for payment of their assessed tax liability.  ECF 20, ¶¶ 5, 6, 9;  ECF 16, ¶¶ 47, 48, 51.  But, the Canavans denied the extent of the tax liability as asserted by the United States.  ECF 20, ¶¶ 4, 10-12;  ECF 16, ¶¶ 46, 52-54.

In the State's Amended Answer (ECF 26), it asserts that the State Comptroller assessed individual income tax, penalty, and statutory interest against the Canavans for the tax years of 2005, 2006, and 2007.  *Id.* ¶ 1.  Further, it states that the Comptroller filed a notice of State tax lien in the Circuit Court for Baltimore County, Maryland in the amount of $125,987.17.  *Id.*  According to the State, that lien balance has grown to $151,585.15.  *Id.* ¶ 2.  And, the State included two exhibits with the Amended Answer that corroborate these assertions.  *See id.* at 5, 7.

The date on which the State's lien was recorded is a bit unclear.  In its Amended Answer, the State asserts that the "Lien Date" is October 26, 2015.  *Id.* ⁋ 1.  But, the notice of the lien included with the State's Amended Answer shows that it was recorded in State court on October 23, 2015.  *Id.* at 5.  In the context of this case, the three-day discrepancy is not material.  Regardless, the State asks the Court to "order and adjudge that the State of Maryland has a valid and subsisting tax lien on all property and rights to property of Kerry Canavan and Bonnie Canavan . . . ."  *Id.* at 2.

As mentioned, defendant Ilkhan did not answer either the Complaint or the Cross Claim. Transway has advised the Court that Ilkhan "does not intend to contest this case or file any pleadings . . . ."  ECF 18, ⁋ 2.  Moreover, plaintiff reported that Ms. Ilkhan had represented that "the promissory note underlying her deed of trust had been sold, and that she was no longer a party in interest."  *Id.* ⁋ 2, n.1.

Two days after the State filed its Amended Answer, the parties filed a "Consent Motion To Approve Settlement Agreement" (the "Agreement").  ECF 27.  Under the Agreement, plaintiff agreed to deliver the purchase price identified in the Purchase Agreement to a settlement agent. *Id.* ⁋ 1. These funds would first be used to resolve all relevant closing costs, with the balance of the proceeds paid as specified in the Purchase Agreement.  *Id.*  Plaintiff would then take the Property "free and clear of any tax liens after distribution" of the proceeds.  *Id.* ⁋ 3(c).  The Agreement further reflected that "[r]ecorded satisfaction of defendant Ilkhan's DOT [would be] required prior to closing."  *Id.* ⁋ 4. And, closing was to occur within 30 days.  *Id.*  ⁋ 5.  I granted the motion by Order of January 27, 2021.  ECF 28.

On March 15, 2021, Magistrate Judge Coulson held a status call with the parties "regarding action items from the previous settlement conference."  ECF 32.  Noting that it was unlikely that

a global settlement would be possible unless the Canavans would "allow the tax authorities to claim the proceeds of the underlying land transaction so as to satisfy their tax liability," he directed "the tax authorities [to] file [a] motion within thirty . . . days of this order . . . ." *Id.*

Thereafter, on April 14, 2021, the United States filed the Motion, noting that the Court "has already ordered the land sale to proceed, with the Plaintiff taking the Transway property free and clear of liens, while depositing the purchase funds with the Court." ECF 37-1 at 1 (citing ECF 27; ECF 28). Therefore, the Motion states: "Once the [interpleaded] funds ($787,500) are deposited with the Court, all that is left is for the Court to distribute them." ECF 37-1 at 1.

To that end, the United States argues that it is "entitled to first priority distribution of the interpleaded funds, up to the value of the federal tax liens against the Canavans." ECF 37 at 1. In support of the Motion, the United States reasserts the facts as outlined in the Cross Claim. *See* ECF 37-1 at 2-4. It also provided the Declaration of Rita Dalton, a Revenue Officer employed by the IRS (ECF 37-2 at 1-4), as well records corroborating the amount of the Canavans' assessed income taxes and the dates that the United States's liens against the Canavans were recorded. *Id.* at 5-35.

The Motion includes revisions as the total amounts of the federal tax liens. It specifies that as of April 12, 2021, the federal tax lien recorded on May 6, 2015, climbed to $642,994 and the federal tax recorded on September 25, 2017, is now in excess of $445,000. ECF 37-1 at 4; *see* ECF 37-2 at 4, ¶16. Thus, as of April 12, 2021, the Canavans' liability to the United States totaled $1,089,609. ECF 37-1 at 4; *see* ECF 37-2 at 4, ¶ 15.

The IRS's current liens are reflected in the table below. *See* ECF 37-2 at 6, 9, 12, 15, 17, 20, 22, 24, 26, 28, 30.

8

| Tax Period | Amount |
|:---:|:---:|
| 2005 | $133,279.68 |
| 2006 | $465,905.29 |
| 2007 | $43,809.72 |
| 2008 | $160,491.27 |
| 2009 | $265,442.89 |
| 2010 | $6,518.80 |
| 2011 | $5,290.19 |
| 2012 | $3,989.11 |
| 2013 | $2,491.39 |
| 2014 | $710.13 |
| 2016 | $1,051.18 |

Based on these facts, the United States asserts that it is "entitled to summary judgment as to its priority in receiving the funds held by the Court." *Id.* at 6. In particular, the Motion observes that defendant Ilkhan has never appeared in this Court and thus has not asserted an interest in the Interpleaded Fund. *Id.* at 4. And, according to the United States, because the State failed to answer the Cross Claim, the State should be "deemed to have admitted the allegations concerning the validity, priority and amount of the federal tax liens." *Id.* Moreover, the government contends that although the Canavans dispute the extent of their assessed income taxes, they may not challenge their liability in this proceeding. *Id.* at 5-6. Rather, they must "bring a refund claim for any tax periods that are paid in full." *Id.* at 5.

## II.      Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Iraq Middle Market Development Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."). The nonmoving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence

in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Notably, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (May 17, 2004); *see also Celotex*, 477 U.S. at 322-24.  As indicated, the court must view all of the facts, including any reasonable inferences to be drawn, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587; *accord Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).  Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007).

Where there is conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  However, to defeat summary judgment, conflicting evidence must give rise to a genuine dispute of material fact. *Anderson*, 477 U.S. at 247-48. If

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016). Conversely, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "[t]he mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [movant]." *Id.*

### III.   Discussion

In the Motion, the United States avers that the recorded tax liens entitle the government to the proceeds from the sale of the Property. ECF 37-1 at 4. Moreover, it argues there is no dispute as to its priority to these proceeds. *Id.* And, in the United States's view, while the Canavans argue that their assessed income taxes are overstated, an interpleader action is not the forum for the Canavans to challenge the amount of their tax liability. *Id.* at 5. Rather, if the Canavans wish to raise such a challenge, they must do so in a refund action as to any tax periods that are already paid in full. *See Robinson v. United* States, 920 F.2d 1157, 1159 (3d Cir. 1990).

### A.   Interpleader

Interpleader is a procedural device that allows "a stakeholder who is uncertain if and to whom he is liable for money or property held by him to join those who are or might assert claims against him." 7 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1702 (3d ed. 2021). The interpleader action was designed to "prevent[ ] the stakeholder from being obliged to determine at his peril which claimant has the better claim, and, when the stakeholder has no interest

in the fund, it forces the claimants to contest what essentially is a controversy between them without embroiling the stakeholder in the litigation over the merits of the respective claims." *Id.*[3]

To begin an interpleader action, "'courts first determine whether the action is appropriate and whether the stakeholder is entitled to bring the action.'" *AmGUARD Ins. Co. v. Ortiz*, CCB-18-3885, 2020 WL 3971743, at *2 (D. Md. Jul. 14, 2020) (quoting *In re Paysage Bords de Seine, 1879 Unsinged Oil Painting on Linen by Pierre-Auguste Renoir*, 991 F. Supp. 2d 740, 743 (E.D. Va. 2014)). "'During the second stage, courts determine the rights of the competing claimants to the property or funds.'" *AmGUARD Ins. Co.*, 2020 WL 3971743, at *2 (quoting *In re Paysage Bords de Seine, 1879 Unsinged Oil Painting on Linen by Pierre-Auguste Renoir*, 991 F. Supp. 2d at 743). *See Legagneux v. Hayes*, No. 22-C-16-001138, 2019 WL 2395894, at *3 (Md. App. Jun. 6, 2019) (describing a similar two-phase process by which Maryland courts adjudicate interpleader actions brought under Maryland Rule 2-221); *Farmers & Mechanics Nat. Bank v. Walser*, 316 Md. 366, 382, 558 A.2d 1208, 1215-16 (1989) ("Rule 2-221(a) in particular has language reminiscent of F.R. Civ. P. 22(1) and . . . the remainder of the rule adopts a practice that is sufficiently similar to the federal practice that the federal cases will be useful for interpretative guidelines.") (citation and internal quotation marks omitted); *see also Thomas Indus., Inc., v. Cty. of Bristol*, 336 F. Supp. 3d 28, 33 (D. Conn. 2018) (explaining that the court's analysis of an interpleader action that had properly invoked  would be the same irrespective of whether the action was brought pursuant to 28 U.S.C. § 1335 or the Connecticut interpleader statute).

---

[3] Federal law provides for two vehicles to initiate interpleader actions: 28 U.S.C. § 1335 and Fed. R. Civ. P. 22.   There are, of course, important differences between the two species of interpleader actions, particularly as it pertains to their respective requirements to invoke a federal court's diversity jurisdiction.  *See generally*  13F WRIGHT & MILLER, FEDERAL PRACTICE § 3636 & PROCEDURE (3d. ed 2021).  But, this suit is not predicated on the Court's diversity jurisdiction.

In this case, there is no real dispute that the interpleader action is proper and that there were, at the outset, adverse claims as to the sales proceeds of the Property.  The only outstanding question concerns the priority of the interpleader defendants' competing claims to the Fund, which is too small to satisfy all of the defendants' claims.

## B.  Validity of Adverse Claims

As I see it, the claims to the sales proceeds of the Property are valid and adverse.  Both the United States and the State of Maryland have obtained valid tax liens against the Property.  But, given the size of the Fund, it is not large enough to satisfy all claims.

### 1.  Federal Liens

Section 6321 of 26 U.S.C. specifies that "if any person liable to pay any tax neglects or refuses to pay the same after demand," that amount "shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." Moreover, any lien so imposed "*shall arise at the time the assessment is made* and shall continue until the liability for the amount so assessed . . . is satisfied or becomes unenforceable by reason of lapse of time."  *Id.* at § 6322 (emphasis added).

Thus, a federal tax lien attaches to all real or personal property belonging to a delinquent taxpayer and remains attached to that property until either the tax is paid or the lien becomes unenforceable.  *See Drye v. United States*, 528 U.S. 49, 58-60 (1999) (finding that a federal tax lien properly attached to a state-law-created property right of pecuniary value).  And, it extends to a taxpayer's right to the proceeds of sale of any subject property.  *See Bess v. United States*, 357 U.S. 51, 58 (1958) ("The transfer of property subsequent to the attachment of the lien does not affect the lien, for 'it is the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere . . . .'" ) (quoting *Burton v. Smith*, 38 U.S. 464, 483 (1839)).

In order to determine "whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach . . . both federal and state courts must look to state law," because "'state law controls in determining the nature of the legal interest which the taxpayer had in the property . . . sought to be reached by statute.'"  *Aquilino v. United States*, 363 U.S. 509, 512-13 (1960) (omission in original) (quoting *Morgan v. Comm'r*, 309 U.S. 78, 82 (1940)).

The Purchase Agreement contains a choice of law provision that states: "This Agreement shall be construed and governed in accordance with the laws of the State of Maryland and in the event of any litigation hereunder."  ECF 1-5 at 10, ₱ 20(a).  Thus, the nature of the Canavans' right to the Property, as qualified by the Purchase Agreement, is governed by Maryland law.  *See KCS Lending, LLC v. Garrison*, PX-18-00059, 2019 WL 1472293, at *2-*3 (D. Md. Apr. 3, 2019) (applying Maryland law to examine the effect of a sales contract on a delinquent taxpayer's interest in a parcel of Maryland realty for purposes of determining whether a federal tax lien may reach the subject property); *United States v. Scheve*, CCB-97-3556, 1998 WL 91987, at * 4 (D. Md. Nov. 20, 1998) (similar).

The Motion provides that the IRS issued a notice of a tax assessment and demand for payment for each tax period between 2005 and 2016, with the exception of 2015, in accordance with 26 U.S.C. § 6303.  ECF 37-1 at 3.  Specifically, on April 21, 2014, the IRS assessed income taxes against the Canavans for the tax periods 2005 to 2007.  *Id.*  In June and July of 2015, it assessed income taxes against the Canavans as to each tax period between 2010 to 2014.  *Id.*  The IRS also assessed income taxes on August 1, 2016, as to the 2008 and 2009 tax periods, and on March 19, 2018, as to the 2016 tax period.  *Id.*

The tax assessments for 2005 to 2007 were recorded on May 6, 2015.  *Id.* at 4.  And, the tax assessments for the period 2008 through 2014 were recorded on September 25, 2017.  *Id.*

No party contravenes these facts. Thus, I am satisfied that the United States has adequately demonstrated the validity of its liens for the tax period between 2005 and 2016.

I pause to note, however, that the IRS did not assess income taxes against the Canavans for the 2008, 2009, and 2016 tax years until after the execution of the Purchase Agreement. *See* ECF 37-1 at 3; ECF 1-3, ¶ 4. Under Maryland law, "a purchaser of land under a sales contract acquires equitable title to the property." *Washington Mut. Bank v. Homan*, 186 Md. App. 372, 392, 974 A.2d 376, 388 (2009). However, "[l]egal title to the property remains with the seller and 'does not pass, other than by operation of law, until a deed is properly executed and recorded.'" *Id.* at 392, 974 A.2d at 388 (quoting *Kingsley v. Makay*, 253 Md. 24, 27, 251 A.2d 585, 587 (1969)). Thus, after the execution of a sales contract for land, the seller retains "a right to the balance of the purchase money but has no beneficial interest in the property." *Watson v. Watson*, 304 Md. 48, 60, 497 A.2d 794, 800 (1985).

Therefore, I am satisfied that the United States's liens against the Canavans associated with the 2008, 2009, 2016 assessments are valid. Moreover, the liens attached to the Canavans' interest in the proceeds of the Property.

## 2.   State Lien

Maryland law provides for a similar process for the State to impose liens on delinquent taxpayers' property. The Maryland Tax–General Article specifies that "[u]npaid tax, interest, and penalties constitute a lien, in favor of the State, extending to all property and rights to property belonging to: (1) the person required to pay the tax . . . ." Md. Code (2016 Repl. Vol., 2020 Supp.), § 13-805(a)(1) of the Tax-General Article ("T.G."). And, "a lien arises on the date of notice that the tax is due and continues to the date on which the lien is (1) satisfied; or (2) released by the tax collector because the lien is: (i) unenforceable by reason of lapse of time; or (ii)

uncollectible." T.G. § 13–806(a).   Moreover, if the State files "a notice of tax lien with the clerk of the circuit court for the county where the property that is subject to the lien is located," the lien assumes "the full force and effect of a judgment lien." T.G. §§ 13-807, 13-808.

The State reports that it "assessed individual income tax, penalty, and statutory interest against Kerry Canavan and Bonnie Canavan for tax years 2005, 2006, and 2007." ECF 26, ¶ 1. The Amended Answer reflects that the State recorded its lien in the Circuit Court for Baltimore County on October 23, 2015. *See id.* at 5.  Thus, I am satisfied that the State's lien is valid and extends to the Canavans' right to the sale proceeds of the Property.

### C.  Lien Priority

Given the validity of the IRS's liens and the State's lien, the only remaining issue for the Court is to determine the priority of the liens as to the Interpleaded Fund.  It is well established that federal law governs where, like here, an interpleader claim involves a federal tax lien.  *See Aquilino*, 363 U.S. at 513-14 (explaining that after a federal tax lien "attache[s] to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's property or rights to property").

Under federal law, "[a]bsent provision to the contrary, priority . . .  is governed by the common-law principle that 'the first in time is the first in right.'" *United States v. McDermott*, 507 U.S. 447, 449 (1993) (quoting *United States v. Cty. of New Britain,* 347 U.S. 81, 85 (1954)). However, by way of 26 U.S.C. § 6323(a), a "lien imposed by section 6321 shall not be valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary."  Put another way, as to a purchaser, mechanic's lienor, holder of a security interest, or a judgment lien

creditor, federal law "deem[s] the United States's lien to have commenced no sooner than the filing of notice" that complies with 26 U.S.C. § 6323(f). *McDermott*, 507 U.S. at 449.

As explained above, Maryland law provides that recording a notice of a State tax lien confers on it "the full force and effect of a judgment lien." T.G. §§ 13-807, 13-808. But, when analyzing the priority of federal tax liens, courts define a judgment lien creditor in accordance with federal law. *See United States v. Gilbert Assoc., Inc.*, 345 U.S. 361, 364 (1953) (explaining that a "judgment creditor should have the same application in all the states") (internal quotation marks omitted)); *Air Power, Inc. v. United States*, 741 F.2d 53, 55 (4th Cir. 1984) (defining a judgment lien creditor, for purposes of 26 U.S.C. § 6323(a), as " . . . a person who has obtained a valid judgment, in a *court of record* and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money . . . [and] who has perfected a lien under the judgment on the property involved . . . .") (alterations and emphasis added in *Air Power*) (quoting 26 C.F.R. § 301.6323(h)-1(g)). Therefore, "[w]hatever the effect under state law of the recording by Maryland . . . of a notice of assessment, such recording [does] not within the meaning of § 6323(a) constitute the entry of judgment in favor of the State of Maryland by a court of record." *Brown v. State of Md.*, 669 F. Supp. 1149, 1153 (D. Md. 1987), *aff'd*, 862 F.2d 869 (4th Cir. Nov. 10, 1988) (Table).

In sum, unless a state lien falls into a category described in 26 U.S.C. § 6323 (and none do in this case), its priority relative to a federal tax lien "depends on when it 'attached to the property in question and became choate.'" *Monica Fuel, Inc. v. I.R.S.*, 56 F.3d 508, 511 (3d Cir. 1995) (quoting *Cty. of New Britain,* 347 U.S. at 85). But, a federal tax lien "is considered choate and perfected at the date of assessment . . . ." *Scheve*, 1998 WL 919873, at *5 (citing *United States v. Vermont*, 377 U.S. 351, 354 (1964)). And, a lien created pursuant to State law is deemed to be

choate when "the identity of the lienor, the property subject to the lien, and the amount of the lien are all established." *McDermott* 507 U.S. at 449 (emphasis omitted) (citing *Cty. of New Britain*, 347 U.S. at 84).

As noted, the Amended Answer demonstrates that the State's lien was recorded in the Circuit Court for Baltimore County on October 23, 2015. *See* ECF 26 at 5.  This notice established a lien in favor of the State of Maryland as to "all property and all rights to property, real and personal" of the Canavans in the amount of $125,987.17. *See id.*  Thus, the State's lien became choate as of that date. *See Jackson v. Wellington & Assoc., LLC*, 389 F. Supp. 3d 1199, 1209 (N.D. Ga. 2019) (finding that a State tax lien became choate, for purposes of federal law, on the day it was recorded); *Thomas v. Cty. of Bristol*, 336 F. Supp. 3d 28, 35 (D. Conn. 2018) (same). Consequently, as to any federal tax assessments issued *after* October 23, 2015, the State's lien has priority to the Fund.

As indicated, on September 17, 2021, plaintiff deposited with the Court the proceeds from the sale of the Property, in the amount of $688,158.52. *See* Docket.  Given the current value of the various federal and State liens attached to the Canavan property, however, the Interpleaded Fund is not sufficient to satisfy all tax claims. *See* ECF 37-1 at 4; ECF 37-2, ⁋ 16; ECF 26, ⁋ 2.

Based on the dates on which the IRS issued certain tax assessments against the Canavans, the government is entitled to priority to satisfy the federal tax assessments issued for the tax periods 2005 to 2007, in the amount of $642,994, and for the tax periods of 2010 to 2014, in the amount of $18,999.62. *See* ECF 37-1 at 3-4; ECF 37-2 at 20, 22, 24, 26, 28.  These amounts total $661,993.62.

However, with respect to the IRS's liens for the tax assessments for 2008, 2009, and 2016, the State's lien has priority to the monies in the Fund.  This is because the State's lien was recorded

in October 2015, before the federal tax assessments were issued for those years.  In particular, for the 2008 and 2009 tax periods, the government did not issue its assessments until August 1, 2016.  And, it was not until March 19, 2018, that the government issued its assessment for the 2016 tax period.  *See* ECF 26 at 6; ECF 37-1 at 3.

The United States contends that the Court should grant the government first priority as to all claims, which would leave the State with no access to the monies in the Fund.  ECF 37-1 at 4.  To that end, it argues that the State failed to answer the Cross Claim and thus should be "deemed to have admitted the allegations concerning the validity, priority, and amount of the federal tax liens."  *Id.*

It is surprising that the State did not respond to the Motion.  But, as I see it, the State's Amended Answer to the Complaint is sufficient to demonstrate that it contests the government's claim of priority for the tax assessments issued on August 1, 2016, for the 2008 and 2009 tax periods, as well as the assessments issued on March 19, 2018, for the 2016 tax period.  In its Amended Answer, the State asserted a lien balance of $151,585.15, based on its filing of a lien in October 2015.  ECF 26 at 1.  And, it asked the Court to determine that the State "has a valid and subsisting State tax lien on all property and rights to property of Kerry Canavan and Bonnie Canavan" and to grant "other and further relief as may be just and reasonable."  ECF 26 at 2.

Accordingly, I decline to endorse the United States's argument that the State should be found to have conceded the issue as to the relative priority of the State's lien.  Moreover, and equally important, the United States has failed to provide any factual or legal basis to support its conclusory assertion that it has priority over the State's lien as to the entirety of the Interpleaded Fund.

### D.  Costs

As a final matter, the United States asked the Court to grant it the "costs of defending this action and prosecuting its crossclaims against the other interpleaded defendants."  ECF 16 at 8.

Under federal law,  there is no "express reference in the federal interpleader statute to costs or attorney's fees," but courts have consistently "held that it is proper for an interpleader plaintiff to be reimbursed costs associated with bringing the action forward."  *Trustees of Plumbers and Pipefitters Nat. Pension Fund v. Sprague*, 251 Fed. App'x 155, 156 (4th Cir. 2007) (citations omitted); *see also Stonebridge Life Ins. Co. v. Kissinger*, 89 F. Supp. 3d 622, 627 (D.N.J. 2015) ("The prevailing principle in interpleader actions brought in the federal courts, whether under the interpleader or under Fed. R. Civ. P. 22, is that it is with in the discretion of the court to award the stakeholder costs, including reasonable attorneys fees, out of the deposited fund.") (citation and internal quotation marks omitted)).  Thus, a court may, in its discretion, award costs and attorneys' fees to a disinterested stakeholder who faced expenses in bringing the interpleader action where doing so would be consistent with the interests of fairness and equity.  *See Aetna Life Ins. Co. v. Outlaw*, 411 F. Supp. 824, 825–26 (D. Md. 1976) (finding that only impartial stakeholders may recover attorney's fees).

Put simply, the United States is not a disinterested stakeholder in this case.  Moreover, the Motion does not include any argument or legal authority in support of this request.  Nor has the United States otherwise submitted any evidence showing the costs it expended in litigating the Motion, let alone in the format specified by the Local Rules.  *See* Local Rules, App'x B, § 1(b).  Therefore, its request for costs is denied.

IV.     Conclusion

For the reasons stated above, I shall grant the Motion (ECF 37) in part and deny it in part. Accordingly, the Court orders disbursement of the monies in the Fund in accordance with the following priority: first, a payment of $661,993.62 to the United States, as to its claims arising out of liens for tax assessments made on April 21, 2014, June 15, 2015, June 22, 2015, and July 13, 2015, pertaining to the tax periods for 2005, 2006, 2007, 2010, 2011, 2012, 2013, and 2014; second, payment of the balance remaining in the Fund to the State, with respect to its lien, as reflected in the notice filed in the Circuit Court for Baltimore County on October 23, 2015.  As noted, the State claims it is entitled to the sum of $151,585.15.  But, based on the remainder of the money in the Fund after payment to the IRS, the Fund will be insufficient to cover the full amount. Therefore, the State is entitled to the remaining money in the Interpleaded Fund, in the approximate amount of $26,164.90.

These awards will deplete the Interpleaded Fund.  As a result, the government cannot recover from the Fund on its claim arising out of liens for tax assessments lodged on August 1, 2016, and March 19, 2018.

An Order follows, consistent with this Memorandum Opinion.


Date: November 23, 2021                            _____/s/_____

                                                   Ellen L.  Hollander
                                                   United States District Judge